IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| ROGER CARRUTHERS,<br> Movant, | ::<br>::<br>:: | MOTION TO VACATE<br>28 U.S.C. § 2255 |
| v. | ::<br>::<br>:: | CRIMINAL ACTION NO.<br>3:08-CR-5-TCB-LTW |
| UNITED STATES OF AMERICA,<br> Respondent. | ::<br>:: | CIVIL ACTION NO.<br>3:13-CV-101-TCB-LTW |

**FINAL REPORT AND RECOMMENDATION**

Movant is confined at the federal prison in Yazoo City, Mississippi. Movant, pro se, challenges under 28 U.S.C. § 2255 his convictions in this Court for receiving and distributing child pornography. (Doc. 120.)[1] Respondent opposes the motion. (Doc. 122). For the reasons discussed below, the undersigned recommends that Movant's motion be denied and that a certificate of appealability be denied.

**I. Background**

In May 2008, a grand jury issued an indictment against Movant containing two counts. (Doc. 1.) Count one charged Movant with knowingly distributing child pornography by use of a computer, and count two charged him with knowingly

---

[1] Unless otherwise noted, all citations to the record are to case number 3:08-cr-5-TCB-LTW.

receiving child pornography by use of a computer. (*Id.*) Both counts charged Movant with violating 18 U.S.C. § 2252A(a)(2)(A). (*Id.*) A violation of that statute triggers a minimum of five years and a maximum of twenty years in prison. 18 U.S.C. § 2252A(b)(1).

Movant was arraigned on the charges on May 21, 2008. (Doc. 6.) On June 24, 2008, Movant filed a motion to dismiss the indictment. (Doc. 13.) On October 8, 2008, the undersigned issued a report and recommendation that the motion be denied, (Doc. 26), and the District Judge adopted that recommendation on December 15, 2008, (Doc. 39).[2]

The trial of this case started on January 6, 2009. (Doc. 48.) A summary of the key evidence presented at trial follows:

> In 2005, FBI Special Agent Steven Forrest was investigating the distribution of child pornography on the internet. While in an online chat room, Forrest communicated with someone using the screen name "LIL1FORFAM". On November 17, 2005; February 13, 2006; March 28, 2006; and May 16, 2006, Forrest had online conversations with a person using the screen name "LIL1FORFAM" during which the person using that screen name e-mailed Forrest videos and still images of child pornography.
>
> Forrest obtained information from America Online ["AOL"] that the

---

[2] Former District Judge Jack T. Camp presided over the pre-trial, trial, and sentencing proceedings in this case.

> screen name and user account transmitting the child pornography were held by Roger Carruthers of 314 Laurel Lane, LaGrange, Georgia. Based on this information, FBI agents obtained a search warrant for Carruthers's home and executed that warrant on July 28, 2006. During the search, the agents interviewed Carruthers in his home. Agent Joanna Southerland testified that Agent Mike Yoder read Carruthers his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Carruthers's girlfriend [Renee Matula] testified that during his interview with the agents, she heard Carruthers ask, "Do I need an attorney?" and heard Yoder reply that Carruthers did not need an attorney. Both agents testified that Carruthers never asked for or mentioned an attorney.
>
> During the interview, Carruthers initially denied that he possessed or distributed child pornography. Carruthers later retracted this statement and told the agents that he used the screen name "LIL1FORFAM" and that he had traded child pornography with individuals he met in chat rooms. After the interview, the agents left the premises with computer evidence they had seized but did not arrest Carruthers. The FBI determined that the computer contained over 4,000 images of child pornography and over 100 videos of child pornography.
>
> . . . .
>
> At trial, Carruthers testified and denied that he had distributed or received child pornography. He testified that, when initially confronted by agents at his home and asked whether he had distributed or received child pornography, he "didn't know it was serious." He stated that he lied to the agents and confessed to trading child pornography to protect his live-in girlfriend, Renee Matula, whom Carruthers stated may have been responsible for the child pornography trading.

*United States v. Carruthers*, 458 F. App'x 811, 813-15 (11th Cir. 2012). The jury found Movant guilty on both counts of the indictment. (Doc. 51.)

3

The Court sentenced Movant to twenty years' imprisonment on count one and ten years' imprisonment on count two, with the sentences to run concurrently. (Doc. 93.) The Court also imposed ten years of supervised release and a special assessment. (*Id.*) Attorney Jeffrey Ertel represented Movant at trial, sentencing, and on appeal.

The U.S. Court of Appeals for the Eleventh Circuit affirmed Movant's convictions and sentence. *Carruthers*, 458 F. App'x at 819. The U.S. Supreme Court denied Movant a writ of certiorari. (Doc. 119.)

Movant contends in his § 2255 motion that Ertel rendered ineffective assistance. (Doc. 120 at 4-10.) Specifically, Movant contends that Ertel improperly failed to:

1. call Denver Pittman as a witness at trial;

2. call an expert witness at trial;

3. object to the number of pornographic images used to determine Movant's sentencing range under the U.S. Sentencing Guidelines despite the jury not making a finding regarding the number of images;

4. obtain records from AOL for use at trial; and

5. raise a speedy trial claim after Movant's second arrest in April 2008.[3]

---

[3] Movant was first arrested and indicted in 2006. Order, *United States v. Carruthers*, No. 3:06-cr-10-JTC (N.D. Ga. Apr. 15, 2008). The Court dismissed that indictment without prejudice for violation of the Speedy Trial Act. *Id.* The Court found that Movant's constitutional right to a speedy trial was not violated. *Id.* The charges were re-filed, and Movant was re-arrested on April 21, 2008. (Doc. 8.)

(*Id.*) Respondent contends that Movant has not shown either that Ertel's performance was constitutionally deficient or that Movant was prejudiced by any of the alleged errors. (Doc. 122.)

## II. Relevant Legal Standards

To prevail on a § 2255 motion, the movant must demonstrate that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose such a sentence; (3) the sentence exceeded the maximum sentence authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. A sentence is subject to collateral attack when there is a fundamental defect that results in a complete miscarriage of justice. *United States v. Addonizio*, 442 U.S. 178, 185 (1979). "To obtain collateral relief, a [movant] must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982).

To establish ineffective assistance of counsel, a § 2255 movant must show that his counsel's performance was deficient such that it was below objectively reasonable standards, and that the deficient performance prejudiced the movant. *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984). As for the first prong of the test, a court should be "highly deferential" in scrutinizing counsel's performance, *id.* at 689, and

5

"must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment," *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000). To establish deficient performance, a movant must establish that no objectively competent lawyer would have taken the action that his lawyer took. *Id.* at 1315.

Under the second prong of the test, a court determines whether counsel's challenged acts or omissions prejudiced the movant, i.e., whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A court need not address both prongs of *Strickland*'s test if the movant "makes an insufficient showing on one." *Id.* at 697.

### III. Analysis

An evidentiary hearing is not warranted if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *Fontaine v. United States*, 411 U.S. 213, 215 (1973). The record in this case conclusively demonstrates that Movant is not entitled to relief under § 2255.

Movant contends in ground one that Ertel rendered ineffective assistance by not calling Denver Pittman as a fact witness at trial. Movant states that Pittman "could testify that the computer was at Renee Matula's house and she used it," but Ertel said "it would not be worth it" to call Pittman as a witness. (Doc. 120 at 4.) Movant provided no further information in ground one.

"'[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'" *Miranda v. United States*, 433 F. App'x 866, 869 (11th Cir. 2011) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)). "'Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision'" that will seldom, if ever, serve as grounds to find counsel constitutionally ineffective." *Id.* (quoting *Conklin v. Schofield*, 366 F.3d 1191, 1204 (11th Cir. 2004)).

Movant has not shown that no reasonably competent lawyer would have failed to call Pittman as a witness to testify that Matula, Movant's live-in girlfriend at the time of his offenses, used the computer containing the child pornography. Movant has not explained Pittman's relationship to Movant or Matula or how Pittman would know Matula used the computer in Movant's and Matula's home. In any event, the

testimony Movant says Pittman would have provided would have been redundant at best. Matula testified at trial that she used the computer once, and Movant implied in his testimony that she used it. (Doc. 101 at 72-73, 178-81.) Evidence also was presented that files pertaining to Matula, including a file containing her resume, were found on the computer in the same file directory as some images of child pornography. (*Id.* at 55-56.) Given the trial evidence that Matula lived in the house where the computer was located, had access to it, and used it at least once, it was a reasonable decision for Ertel not to call Pittman to testify that Matula used the computer.

Movant also has not shown that he was prejudiced by Ertel not calling Pittman as a witness. The evidence against Movant was overwhelming, including evidence he used the computer to distribute child pornography at times when he was away from work and had no other alibi, his confession to law enforcement, and the changing stories he told before and during trial. It is not reasonably probable that the jury would have acquitted Movant had a witness named Pittman testified that Matula used the computer in Movant's house that contained child pornography. Movant is not entitled to relief on ground one of his § 2255 motion.

Movant contends in ground two that Ertel should have called "an expert witness" at trial. (Doc. 120 at 5.) Movant has not identified any person that Ertel

should have called as an expert witness. Nor has he identified what the expert witness' testimony would have been or even the general subject of that testimony. A movant cannot satisfy his burden of demonstrating ineffective assistance of counsel with "unsupported allegations, conclusory in nature and lacking factual substantiation." *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991). Ground two fails.

In ground three, Movant complains that the Court took into account at sentencing the number of images of child pornography that he received and distributed despite the jury not having made any findings about the quantity of images. (Doc. 120 at 6-7.) Movant further states that "Ertel would not argue," which the undersigned construes as a claim that Ertel rendered ineffective assistance by not objecting to this issue at sentencing. (*Id.* at 7.)

To the extent Movant asserts a substantive claim of sentencing error, apart from the ineffective assistance claim, that claim is procedurally defaulted because he did not raise it on direct appeal. *See Black v. United States*, 373 F.3d 1140, 1142 (11th Cir. 2004) ("Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a [] § 2255 challenge" unless the movant shows "both cause for his default as well as demonstrating actual prejudice suffered

as a result of the alleged error."); *see also Carruthers*, 458 F. App'x at 811 (listing Movant's claims on direct appeal). Ineffective assistance of counsel may constitute cause for a procedural default, but "[n]ot just any deficiency in counsel's performance will do[.] . . . [T]he assistance must have been so ineffective as to violate the Federal Constitution." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). "In other words, ineffective assistance adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim." *Id.*; *see Lynn v. United States*, 365 F.3d 1225, 1235 (11th Cir. 2004).

Ertel was not deficient for not objecting to the lack of a jury finding on the number of pornographic images for which Movant was responsible because the law did not require the jury to make any such finding. Only a "fact that, by law, increases the penalty for a crime is an 'element' [of the crime] that must be submitted to the jury and found beyond a reasonable doubt." *Alleyne v. United States*, 133 S. Ct. 2151, 2155 (2013). Facts that increase statutory minimum or maximum sentences are facts that increase the penalty for a crime and, thus, must be submitted to the jury. *Id.* at 2157-58.

The Court made no factual finding in this case – regarding the quantity of pornographic images found on Movant's computer or otherwise – that increased the

statutory minimum or maximum sentence. The jury convicted Movant of two violations of 18 U.S.C. § 2252A(a)(2)(A), each of which carried a statutory minimum sentence of five years' imprisonment and a statutory maximum sentence of twenty years. 18 U.S.C. § 2252A(b)(1). The statutory minimum and maximum sentences were not affected by the quantity of pornographic images at issue, *id.*, and thus were not increased in Movant's case. In short, "the jury found [Movant] guilty of all of the factors necessary to require the five-year mandatory minimum" sentence. *See United States v. Aguilar*, No. 12-13374, 2013 WL 2256498, at *7 (11th Cir. May 22, 2013). Because a challenge to the sentence on the basis of the Court's factual findings lacked merit, Ertel was not deficient for not raising it. *See Owen v. Sec'y for Dep't of Corr.*, 568 F.3d 894, 915 (11th Cir. 2009) (holding that because claims lacked merit, "any deficiencies of counsel in failing to raise or adequately pursue them cannot constitute ineffective assistance of counsel").

Moreover, Movant's total sentence of twenty years' imprisonment was far less than the bottom of the advisory sentencing range calculated under the U.S. Sentencing Guidelines (the "Guidelines"). The Guidelines range, which took into account the number of pornographic images for which Movant was responsible, was thirty years

11

to life imprisonment. (Doc. 103 at 5-6; Presentence Report at 26.)[4] Excluding the five-point enhancement to the offense level under the Guidelines for an offense involving 600 or more pornographic images, Movant's sentencing range under the Guidelines would have been 210 to 262 months' imprisonment. (PSR at 16, 26; Guidelines Manual, Ch. 5 Pt. A (Nov. 1, 2008).) Movant's 240-month prison sentence did not exceed the Guidelines range calculated with the enhancement or without it. Movant has not shown any prejudice from Ertel's failure to argue at sentencing that the Court could not take into account the number of pornographic images that Movant received or distributed. Movant is not entitled to relief on ground three.

In ground four, Movant contends that Ertel should have gotten records from AOL that "would have shown [the AOL account] to be used at Ms. Renee Matula's house at the time she claim she didn't own a computer." (Doc. 120 at 8.) Movant does not specify which house to which he refers. It was undisputed at trial that Matula lived in a trailer, began moving into a house with Movant in September 2005, and did not fully move into the house until December 2005. (Doc. 101 at 77, 143-44, 174.) It also was undisputed that Movant had access to the computer as early as Summer 2005, regardless of whether it was at Matula's trailer or Movant's house, and that

---

[4] Movant's Presentence Report ("PSR") is in the Court's sealed files.

Movant personally established the AOL account in June or July 2005. (*Id.* at 144-46, 163.)

It is not clear how records purportedly showing that Movant's AOL internet account was used at a time when a particular computer may have been at Matula's trailer and was accessible by Movant would have helped Movant. More importantly, Movant has not shown that it is reasonably probable that the jury would have acquitted him if such records had been presented at trial. Movant testified that the computer was at Matula's trailer a few months before he moved it to the house in his attempt to convince the jury that Matula was the one distributing and receiving child pornography. The jury obviously did not believe that Matula, not Movant, committed the crimes, and Movant has not shown how any additional AOL record would have helped his case given the evidence described above. Movant is not entitled to relief on ground four.

In his final ground, Movant contends that Ertel should have "raise[d] speedy trial a second time" when Movant was re-arrested and re-indicted. (Doc. 120 at 9.) Less than nine months passed after Movant was arrested in regards to the second indictment and the date his trial started. There was no merit in a claim that Movant's constitutional right to a speedy trial was violated by that passage of time. Indeed, the

13

Eleventh Circuit held that the period of over two years between Movant's first arrest and his trial did not violate his constitutional right to a speedy trial. *Carruthers*, 458 F. App'x at 817-18. It thus was reasonable for Ertel to forgo a claim that the much shorter delay between Movant's second arrest and trial violated his constitutional right to a speedy trial.

There also was no meritorious claim that the delay between Movant's second arrest and trial violated the Speedy Trial Act. That statute generally requires trial to commence within seventy days of the date the indictment is filed or the defendant is arraigned on the indictment, whichever is later. 18 U.S.C. § 3161(c)(1).

Movant was arraigned on May 21, 2008, after the indictment was filed. (Doc. 6.) That is therefore the date on which the seventy-day clock began running. The clock stopped running on June 24, 2008 when Movant filed his motion to dismiss the indictment because "[a]ny period of delay . . . resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" is not counted toward the seventy-day limit. (Doc. 13); *see* 18 U.S.C. § 3161(h)(1)(D). Over half of the seventy-day period remained when Movant filed that motion.

AO 72A
(Rev.8/82)

The clock never resumed running because on October 23, 2008, before the parties had filed all submissions on the motion to dismiss, the Court granted Respondent's motion for a continuance of trial and found that the ends of justice were served by the continuance (which turned out to be less than two months) and outweighed the best interest of the public and Movant in a speedy trial. (Doc. 34); *see* 18 U.S.C. § 3161(h)(7) (providing that delay from such a continuance is not counted toward the seventy-day limit). The record demonstrates that there was no violation of the Speedy Trial Act. Ertel did not render ineffective assistance by not raising such a claim. Movant is not entitled to relief on the final ground of his § 2255 motion.

## IV. Certificate of Appealability ("COA")

A federal prisoner may not appeal the denial of his § 2255 motion "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1). Rule 11 of the Rules Governing § 2255 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that

15

matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (citations and quotation marks omitted).

A COA is not warranted here. Movant has not shown that he received ineffective assistance of counsel for the reasons discussed above, and that conclusion is not reasonably debatable.

V.   **Conclusion**

For the foregoing reasons, **IT IS RECOMMENDED** that Movant's motion to vacate sentence under 28 U.S.C. § 2255 [120] be **DENIED** and that case number 3:13-cv-101-TCB-LTW be **DISMISSED**. **IT IS FURTHER RECOMMENDED** that a certificate of appealability be **DENIED**.

**SO RECOMMENDED** this 17 day of September, 2013.

LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE